UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,   Crim. No. 11-216 (DSD/JJK)

      Plaintiff,

v.

      **REPORT AND RECOMMENDATION**

1.  Trudale Raymond Williams,

      Defendant.

---

Jeffrey M. Bryan, Esq., Assistant United States Attorney, counsel for Plaintiff.

Manvir K. Atwal, Esq., Assistant Federal Defender, counsel for Defendant.

---

JEFFREY J. KEYES, United States Magistrate Judge

    This matter is before the Court on Defendant Trudale Williams' Motions to Suppress Evidence and Statements[1] (Doc. Nos. 37, 38.) This Court held a hearing on the motions on January 18, 2012, and received testimony from Officers Christopher Tucker and Brandon Bartholomew of the Minneapolis Police Department. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For

---

[1] This Court notes that although Defendant filed a motion to suppress statements, he does not specifically challenge any aspect of the statements in this case but only the probable cause underlying arrest. In fact, in his supplemental brief Defendant seeks to suppress only the firearm based on the lack of probable cause underlying his arrest and does not address any statement-related issues. Because this Court finds that the underlying arrest was based on probable cause, and Defendant raises no other argument in connection with statements made to the police, Defendant's motion to suppress statements should be denied.

1

the reasons stated below, this Court recommends that Defendant's motions be denied.

## BACKGROUND

On July 6, 2011, Defendant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a firearm in furtherance of a drug trafficking activity, in violation of § 924(c)(1)(A). (Doc. No. 6.) The facts giving rise to Defendant's Indictment are as follows. On March 29, 2011, a concerned citizen called 911 to report that three males were standing in front of a house on Fremont Ave in North Minneapolis—across the street from the complainant's home—flagging down cars for narcotics sales. (Doc. No. 53, 1/18/12 Hr'g Tr. ("Tr.") 8, 10.) Acting on the citizen's complaint regarding illegal drug activity around Fremont Ave, police officers from the Minneapolis Police Department began surveilling the area that is known to the police as a high crime area where illegal drug activity occurs. Specifically, Officers Tucker and Bartholomew, both of whom work in the 4th Precinct of North Minneapolis, conducted surveillance of the area around 34th and Fremont. (Tr. 9, 10, 23–24.) The Officers parked some distance from the suspected drug location and then walked to alleys across the street from the suspected drug activity to find a spot from where they could surreptitiously observe the house at issue and the surrounding area. (Tr. 10.) Each Officer found a different spot from which to conduct his surveillance.

From where Officer Tucker was standing he saw at least six people loitering on the front steps and front yard area of the Fremont Ave house reported by the 911 caller.  (Tr. 12.)   Tucker observed, through binoculars, a clear baggie with a white substance passed from one male to another male—later identified as Defendant Trudale Williams—and then back to the first male. (Tr. 13.)  In Tucker's experience, "that usually ends up being some type of pill or crack cocaine . . . ."  (*Id.*)  Officer Tucker also observed the man wearing a multi-colored jacket with a larger plastic baggie filled with a dark green substance, which the Officer suspected to be marijuana.  (Tr. 13, 15.)

Officer Bartholomew conducted his own surveillance of the area from the yard directly across the street from the incident address.   (Tr. 32, 33.)   Like Officer Tucker, Bartholomew observed a plastic baggie with a white substance passed from a male later identified as Myron Williams to Defendant and then back to Myron Williams.  (Tr. 35.)   He also saw Defendant pulling out a plastic baggie with a green substance and raising it to his nose, as if to smell it.   (*Id.*) And like Officer Tucker, Bartholomew testified that the male later identified as Defendant, Trudale Williams, wore a multi-colored jacket.  (Tr. 34.)  Ultimately, the Officers arrested Defendant.  (Tr. 16.)

Both Officers Tucker and Bartholomew are seasoned Minneapolis police officers, ranging in experience from eight to fifteen years on the force.  (Tr. 5, 30.) Both are assigned to the 4th Precinct Directed Patrol Unit, which is tasked with patrolling "crime hot spots."  (Tr. 5.)

3

Defendant moves to suppress the firearm that was found after he was arrested and searched without a warrant.  He does not challenge the search incident to his arrest, but argues that the firearm should nonetheless be suppressed because the police lacked probable cause to arrest him.   The Government opposes this motion.  This Court concludes that the police had probable cause to arrest Defendant and no evidence should be suppressed.

## DISCUSSION

Probable cause exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003) (quoting *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001)); *accord United States v. Travis*, 993 F.2d 1316, 1323 (8th Cir. 1993).  A "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity is sufficient." *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (internal quotations omitted).

Here, the Officers received a report of suspected drug activity in a neighborhood known for criminal and drug activity, from a concerned citizen who lived across the street from the location at issue.   The information was corroborated through the Officers' own investigation and surveillance of what they ultimately concluded—from years of training and experience—to be narcotics transactions.  *See United States v. Mendoza*, 421 F.3d 663, 667 (8th

Cir. 2005) ("In determining whether probable cause exists, we recognize that the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.") (citations and internal quotations omitted). As Officer Tucker stated, while street level distributions vary, they typically involve people loitering in an area without a purpose, and flagging, approaching, or talking to passers-by, pedestrians, or vehicles. (Tr. 30.) And in his substantial experience on the force, the vast majority of drugs are in plastic "baggies" or "bindles" that are passed around or exchanged from person to person. (Tr. 6.) Here, both Officers observed Defendant and another male pass to each other baggies with white and green substances, which the Officers thought were crack cocaine and marijuana. (Tr. 13, 31, 35.) Together, this information provided probable cause to arrest Defendant. *See Mendoza*, 421 F.3d at 667 (stating that the court must "view the totality of the circumstances in [the defendant's] case through the eyes of the experienced narcotics agents involved in his arrest"). Accordingly, this Court concludes that suppression of the firearm that was found during the search incident to arrest is unwarranted and Defendant's motion should be denied.

## RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Defendant Williams' Motion to Suppress Evidence (Doc. No. 37), be **DENIED**; and

2.   Defendant Williams' Motion to Suppress Statements (Doc. No. 38), be **DENIED**.

Date:  February 13, 2012

*s/Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 20, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **seven** days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely

order and file a complete transcript of the hearing within **ten days** of receipt of the Report.